# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $3,000.00 IN FUNDS ON DEPOSIT IN　　Case Number: 19-MJ-1232
JP MORGAN CHASE BANK ACCOUNT ENDING
IN 2095 HELD IN THE NAME OF JAYA JOHNSON

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Brian Wallander, being duly sworn depose and say:

I am a Task Force Officer assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $3,000.00 in funds on deposit in JP Morgan Chase Bank account ending in 2095 held in the name of Jaya Johnson that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that is derived from proceeds traceable to specified unlawful activity, namely, mail fraud in violation of 18 U.S.C. § 1341, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Affiant
Brian Wallander, USSS TFO

Sworn to before me, and subscribed in my presence

3/19/19 @ 9:50 a.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Brian Wallander, having been duly sworn on oath, state as follows:

**Affiant's Background**

1. I am a Police Officer with the Greenfield Police Department and have been employed with that department since 1996. I am currently assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force ("MFCTF"). I was federally deputized in October, 2015. My duties as a Police Officer and Task Force Agent with the Secret Service include investigating financial crimes such as identity fraud, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my employment with the Greenfield Police Department and the MFCTF, I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2. As a Police Officer and Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including conducting undercover operations, reviewing physical and electronic evidence, obtaining and reviewing financial records, and working with cooperating sources of information. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, including police officers of the Marquette University Police Department and the Milwaukee, Wisconsin Police Department, all of whom I believe to be truthful and reliable.

**Property Sought to be Seized**

5. I submit this affidavit in support of an application for a warrant to seize up to $3,000.00 on deposit in JP Morgan Chase Bank account ending in 2095 ("JPM 2095"), held in the name of Jaya Johnson.

6. For the reasons set forth below, I submit that up to $3,000.00 in funds on deposit in JPM 2095 are:

   a. Funds traceable to, and are therefore proceeds of, a mail fraud offense or offenses committed in violation of 18 U.S.C. § 1341;

   b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

   c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

**Summary of Scheme to Defraud**

7. I submit that there exists probable cause to believe that up to $3,000.00 in proceeds of a mail fraud scheme – which involved material misrepresentations and the use of a commercial interstate carrier in connection with an employment recruiter fraud scam – have been deposited into JPM 2095, the account from which up to that amount of funds are sought to be seized.

8. As a part of an employment recruiter fraud scam, a fraudster sent a counterfeit check in the amount of $4,370 to victim J.B. by Federal Express. The fraudster instructed J.B. to deposit the $4,370 check into J.B.'s personal bank account and then to purchase $3,000 in money orders and to deposit the $3,000 in money orders into JPM 2095.

**Facts Supporting Findings of Probable Cause**

**Common attributes of cross-border fraud schemes**

9. According to a March 2013 publication of the U.S. Federal Trade Commission, consumers lose hundreds of millions of dollars annually to cross-border financial crimes. One common fraud scheme is an employment recruiter scam in which a fraudster contacts a victim using job posting web sites on the internet and offers the victim employment. Often, the fraudster will front funds to the victim on the false pretense that the fraudster needs the victim to make a purchase as part of the new job. The fraudster will send the victim a check and instruct the victim to deposit the check into the victim's bank account. The scammer will then request funds back through gift cards, money wires, ACH deposits, or money orders. After the victim pays funds back to the fraudster, the original check from the fraudster that the victim had deposited into the victim's back account is dishonored by the victim's bank and the victim is out those funds.

10. Foreign perpetrators of such scams sometimes recruit witting or unwitting persons within the United States to open bank accounts that the foreign perpetrators use to receive

2

proceeds of the scam. The foreign perpetrators often target persons within the United States who are vulnerable or seeking companionship to open such accounts at financial institutions within the United States. Sometimes those accounts are opened by a victim of a romance scam. Sometimes the accounts used to receive proceeds of a fraud scam are opened in the name of a fictitious business, such as a limited liability company, in order to conceal the fraudulent nature of the recipient bank account from victims and victims' financial institutions.

**Statement of victim J.B. regarding the employment recruiter fraud scheme**

11. On March 8, 2019, Police Officer Adam Schein with the Marquette University Police Department spoke with a Marquette University student having the initials J.B., who reported being the victim of an employment recruiter fraud scam.

12. J.B. explained that he resides at 1XXX W. Kilbourn Avenue, Apartment X, in Milwaukee, Wisconsin, which is in the Eastern District of Wisconsin.

13. J.B. stated that starting in about February 2019, J.B. had posted his resume on a website called Handshake to market himself for employment in the field of Operations Management. J.B. explained that Handshake is a tool used by Marquette University to help students find employment and that employers get vetted through the process.

14. J.B stated that at the end of February 2019, he was contacted via text message from "Gloria Macall," who claimed to be from "Real Ispat and Power Ltd" (a steel and power manufacturer). "Macall" then connected J.B. with the purported manager of "Real Ispat and Power Ltd" named "Brian Xiong" using a digital communications platform called Google Hangouts. After conducting an interview using Google Hangouts, "Xiong" offered J.B. a job.

15. J.B. reported that on March 6, 2019, "Xiong" gave J.B. instructions to deposit a check – that "Xiong" was going to send to J.B. – into J.B.'s personal bank account and wait for further instructions on how to pay a vendor for work supplies.

16. On March 7, 2019, J.B. received the check in the amount of $4,370 from "Xiong" via Federal Express. The check was sent to J.B by overnight delivery with Federal Express tracking number 7746222614444. I used the FedEx shipment tracking website and learned that the package originated in Orlando, Florida.

17. J.B. deposited the $4,370 check into J.B.'s personal Wells Fargo account as instructed by "Xiong." "Xiong" then gave J.B. instructions to go to Walmart or Target and purchase multiple $500 gift cards to pay the vendor. As instructed by "Xiong," J.B. attempted to purchase multiple $500 gift cards at Walmart but was unable to complete the purchase due to Walmart's security policy.

18. That same day, March 7, 2019, "Xiong" instructed J.B. to go to the U.S. Post Office and purchase three $1,000 money orders. As instructed by "Xiong," J.B. purchased three $1,000 money orders at the U.S. Post Office located at 345 W. St. Paul Street, Milwaukee, Wisconsin.

19. "Xiong" then instructed J.B. to go to the nearest Chase Bank and deposit the $3,000 in money orders into JPM 2095, which "Xiong" stated was the vendor's account. "Xiong" told J.B. that this money would be used by the vendor to purchase work equipment and that the vendor would send this equipment to J.B. by the following day, March 8, 2019.

20. On March 7, 2019, as instructed by "Xiong," J.B. went to the Chase Bank located at 111 E. Wisconsin Avenue in Milwaukee and deposited the $3,000 in money orders into JPM 2095.

21. J.B. reported that on the following day, March 8, 2019, he received a package from Federal Express. J.B. thought the package was the work equipment that "Xiong" stated was going to be shipped to J.B. Instead, the Federal Express package contained another check, this one in the amount of $3,870. J.B. then checked his personal Wells Fargo account and found that his account had a negative balance because the original $4,370 check from "Xiong" that J.B. had deposited into J.B.'s personal Wells Fargo account had bounced.

22. J.B. made several attempts to contact "Xiong" to find out what was going on but J.B. was unsuccessful. J.B. then realized that he had been the victimized through a fraud scam.

23. As of March 18, 2019, J.B. has not received money back from the employment recruiter fraud scam.

24. I therefore submit that there exists probable cause to believe that the $3,000 that "Brian Xiong" caused J.B. to deposit into JPM 2095 on March 7, 2019, consisted of proceeds of an employment recruiter fraud scam.

## Applicable Asset Forfeiture Provisions

25. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

26. Section 984 (a) provides in part:

(1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

27. 18 U.S.C. § 984(b) provides: No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

28. Thus, under Section 984, a court may order the forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

29. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to seized for forfeiture by the accompanying seizure warrants.

## Conclusion

30. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $3,000.00 on deposit in JP Morgan Chase Bank account ending in 2095, held in the name of Jaya Johnson, are:

   a. Funds traceable to, and are therefore proceeds of, a mail fraud offense or offenses, committed in violation 18 U.S.C. § 1341;

   b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

   c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

### # #

5
Case 2:19-mj-01232-WED   Filed 03/27/19   Page 6 of 6   Document 1